Haywood, J.
delivered the opinion of himself and of Judge Peck.
Judge Whyte agreed in the result.
On Monday, the 20th of January, 1823, the Court of Pleas and Quarter Sessions for the county of Washington met after adjourning on the Saturday preceding. Three persons appointed commissioners by the Court at a former term to settle with the county trustee, clerk of the Court, and others, made their report. They stated that having been long since appointed to settle with the clerk and trustee, and finding it impracticable, they would report their difficulties and progress. Soon after their appointment, they say, they gave notice in writing to the clerk, James Sevier, to produce the documents in his office, who answered it was impossible at this late day to produce them; that on the 17th of January, 1823, they again gave notice in writing, for the same purpose, and named one o’clock of the 18th, and again were answered that nothing could be done. They surmise the loss of documents and evidences by the clerk, and surrendered their appointment to the Court. The notices referred to in the report are set forth verbatim ; one dated the 24th of January, 1818, the other the 17th of January, 1823. From which report, says the record of the same day, being the second Monday of the term, it appears to the Court that the clerk has failed and refused to enter into a settlement with the commissioners, and to furnish them with the vouchers required by law, to enable them to settle *269 with the county trustee ; and also that he has failed to deposit the account designated in the Act of 1819, ch. 53. And the'said clerk having failed to produce to the Court at the first Court after the first of January, 1818,1819, 1820,1821, 1822, and 1823, the treasurer’s receipt for the money collected by him for the use of the State, in manner prescribed by law for the years aforesaid; and also the treasurer’s receipt for and on account of the tax chargeable to the sheriff, &c. for the years aforesaid; forasmuch therefore as said Sevier, clerk, has failed and refused to settle with the commissioners, and to surrender to them the necessary documents to settle with the county trustee ; and has failed to deposit with the commissioners a copy of the account required by the Act of 1819, ch. 53, § 8, for 1818, 1819,1820, 1821, 1822, 1823, and has failed and refused to produce to the Court, at their first session after the first of January, for 1818, 1819, 1820, 1821, 1822, and to this Court in 1823, being the first session of the Court after the first of January, 1823, the treasurer’s receipts required by 1819, ch. 133, and has thereby become guilty of a misdemeanor in 'office; therefore it is considered, ordered, and adjudged that J. Sevier, clerk, &c. be removed from office, and that the same is now vacant. January sessions, 1823, being Friday, the 24th of said month, there being present in Court a majority of the said justices, they elected Matthew Stephenson to be their clerk. On Saturday, the 25th of said month, Sevier tendered a bill of ex-' ceptions, which was sealed and made a part of the record, and states “ that the Court on the second Monday of said term removed the clerk, who was then absent, and had no notice of the intended removal; he having gone home on the Saturday preceding, and being detained by high waters from returning. On that day Elbert Sevier was his deputy, doing the business in Court. A postponement was requested by the friends of the clerk, but the Court made an order that on the Friday following they would elect another clerk, and put on the record their reasons for removal. And on the said Friday appointed for the election Sevier appeared in Court and produced receipts from the different trustees for all moneys due from 1799 to that day; and the receipts of the public treasurer up to the beginning of the year 1822. He stated to the Court that the notice was delivered to him about 9 o’clock on Friday of the first week of the Court, at which the removal took place, to produce books and dockets the next day by four o’clock, which was impossible; and the statement was admitted to be true. And thereupon he asked the Court to rescind the order of removal; and also because he had the whole of this term to produce the receipts and vouchers which he then had ready ; and the Court refused to rescind, and elected the clerk as aforesaid. The receipt for 1822 from the’public treasurer was not produced, Sevier saying that by the alteration of the law he was not obliged to produce the same at this term.” The.bill of exceptions was dated the 23d of January, 1823. Sevier prayed an appeal in the nature of a writ of *270 error to the Circuit Court; he assigned errors, and the Circuit Court was of opinion that the writ of error would not lie, and dismissed it. Sevier then moved the Circuit Court for a mandamus to the County Court to restore him, which the Court refused, and he appealed to this Court.
Upon this record various questions have been made and submitted to this Court.
One of them is whether the Circuit Court erred in dismissing this writ of error, and whether a writ of error will lie for refusing the mandamus.
At March term, 1823, of the Circuit Court, a rule was made on Stephenson and the justices, to show cause why a writ of mandamus should not issue to restore, &c. to which Stephenson returned a written answer, as did likewise thirteen of the justices together, accompanied with sundry certificates. Eight of the justices made another return together. One question for this Court to decide is, whether the writ of error was legally taken from the County to the Circuit Court or not.
We must not look to English books to direct us on this question, for these will deny a writ of error in many cases where, by the decisions of this Court, founded upon the comprehensive expressions of the acts of this State concerning writs of error, it will lie in this State; for instance, it will lie against the State upon a judgment in its favor, without any fiat of the Attorney-General, or for damages recovered by the State against an individual, or for any other thing recovered against him ; for a continuance refused, when it should have been granted, or vice versa ; and for a new trial refused, where it should have been granted, or vice versa ; or for a nonsuit, or upon a decree in chancery. In England error will not lie on a peremptory mandamus, nor upon a mandamus where the return is allowed; 1 Strange, 536, 625; but it will lie by our statutes. If an appeal, in the nature of a writ of error, will not lie on a sentence of removal, nor yet from a sentence upon a mandamus, what remedy can the removed clerk have against the most injurious ouster? If a will in a County or a Circuit Court be improperly proved, and admitted to registration, this Court will notice the defects complained of upon a writ of error, and correct the errors, if any; though it could not be done in England, but by appeal to a court of higher ecclesiastical jurisdiction. So, of a sentence for a legacy, or filial portion, or distributive share of an intestate’s estate, a writ of error will lie here, though, in England, it is otherwise. And why is there so much difference ? Because of the unlimited terms used in our acts of Assembly. If error will lie upon a judgment of the Circuit Court, given on a mandamus, directed to justices of the peace, why not also a writ of error, directed to the same justices? Why not make the incumbent and them pay costs as well in this instance as in that of the mandamus ? It were better to have no costs than no justice. The Act of 1794, *271 ch. 1, § 64, says: “If, in rendering judgment in the county courts, error intervenes, there may he a writ of error, and that the Court shall allow it.” In what cases ? In all where judgment may be rendered. The cer-tiorari would lie, perhaps, in cases like the present, to remove the cause to a superior court, according to the rules of the common law; but, if an English statute had said that a writ of error should also lie, what is there to prevent it? And the question occurs, Is the Act of 1794 large enough to give the writ of error in such a case as the present ? The Act allows of it in every case in which the Court can render a judgment. And.certainly, in the present case, the County Court rendered a judgment. It is, therefore, considered, ordered, and adjudged by the Court that J. Sevier shall he removed, &c. is a judgment, both in form and substance. If in England the certiorari lies because the writ of error will not, it does not follow that the writ of error will not lie because the certiorari does. By the Act of 1813, ch. 78, § 2 : “ Appeals in the nature of writs of error shall lie in all cases, determined in the county courts, where either party shall be dissatisfied, to the Circuit Court, under the same rules and regulations as appeals are granted to the Supreme Court. The Act referred to is 1811, ch. 72, § 11, regulating appeals from the circuit courts to this Court; and this Act says, that any party in any suit, who shall be dissatisfied with the judgment of the Circuit Court, or shall be of opinion that there was error in the record of the proceedings in such suit, may have his appeal in the nature of a writ of error to the Supreme Court, the certiorari would not be an effectual remedy in the present case, for it would only remove the sentence of amotion, but not the matter in favor of Sevier, which appears in his bill of exceptions ; and the Circuit Court could not have a full view of the case. What redress, then, has the removed clerk ? The mandamus is refused, the writ of error is refused, the certiorari will not do. A simple appeal is only for re-examination of the testimony, and will not suit the purpose. Shall there be excluded the writ of error, also, when the words of our acts of Assembly are amply sufficient to embrace the case ?
The bill of exceptions is signed by four of the justices on the last day of the term, and there is no reason to believe that it does not contain a correct statement.
This writ of error was well taken; the Circuit Court ought to have acted upon it, and to have either reversed or confirmed the sentence; and this Court must now proceed to examine whether the County Court acted properly in rendering the judgment of removal or not.
By the Acts of 1799, ch. 30; 1801, ch. 17, § 1; 1807, ch. 66; 1811, ch. 47; 1812, ch. 16; 1817, ch. 132; and 1819, ch. 133, the clerk must pay the public and county taxes by him collected to the county trustee and public treasurer in each year, and produce receipts to the Court of which *272 he is clerk in verification of the fact, at the fii’st term of the Court after the first 'day of January in each year. The merchants’ tax, so far as collected before this term of the Court, must be verified in like manner. Iiis failure shall be considered a misdemeanor in office, for which said clerk shall be removed from office by the Court of which he is clerk, and shall not be eligible to the said office for the term of ten years. It is argued that he cannot be removed without a previous conviction on an indictment for the misdemeanor, because by the Constitution of this State, art. 5, § 10, he is to hold his office during good behavior, which gives him a freehold therein, of which, by art. 11, § 8, he shall not be deprived but by the judgment of his peers or the law of the land. These words mean, by the verdict of a jury in case of disputed facts and where the facts are otherwise legally apparent, by the judgment of a Court legally constituted. For instance, if the fact be demurred to, or be confessed on record by the party, then, without the intervention of a jury, the Court applies the law to the fact so legally apparent. Wherever a punishment is prescribed by law for an offence committed, it cannot be inflicted by art. 11, § 14, but by indictment; yet it does not follow that for the sake of inflicting it a proceeding directed by the Legislature, which they intended to be a civil proceeding, shall therefore be converted into a criminal one by indictment. There will be a conflict between the punishment and the civil proceeding directed by the Legislature, and as this civil proceeding cannot be converted into an indictment, therefore the punishment will be deemed impracticable, and the civil proceeding will remain as it was intended by the Legislature. It must of necessity be so, for if indicted there would be a valid objection, because that was not the mode directed by law, but a civil one, so that the punishment would fail that way; and if it could not be inflicted in the civil proceeding, then it must fail wholly, whether in contemplation of the Act it was to be a part of the judgment or a consequence of the judgment. And all that the argument can prove is, that disqualification for ten years is not to be a consequence of the sentence of removal. That this was intended by the Legislature to be a civil procedure is strongly evinced by their departure, in the Act of 1817, ch. 132, from the provision made in all th’e prior Acts of 1799, ch. 3 ; 1801, ch. 17 ; 1807, ch. 66; 1811, ch. 47; 1812, ch. 16, that the removal should be after conviction upon an indictment. In the Act of 1817, when all the former Acts were before them, this provision is dropped and omitted, and the failure of the clerk to produce the receipts in court is made the only foundation of the removal. It is evinced also by the condition that for a failure of the clerk of the Supreme Court this latter court could not remove till after a conviction in a Circuit or County Court, where an indictment could not well be supported for want of a prosecutor and witnesses, if at all; for who are the witnesses to prove the failure if it is not to be recorded ? The judges; and they may be in *273 the public service in a far distant part of the State. And besides, when can the clerk be removed if not at the term when the failure occurs ? It will take a year or two to have the indictment found and the trial brought on in the County Court, a year more, perhaps, to bring on the trial in the Circuit Court, and a year or two after that to have a final decision in the Supreme Court. Was it the intention of the Legislature that the incumbent clerk shall remain all this time in possession of the office, receiving and converting to his own use the moneys collected from the people for public uses? .Must the County or Circuit Court, upon the indictment, pronounce the sentence of-removal, and must the removing Court appoint the clerk of the Supreme Court ? The clerk to be removed, after all this delay, may possibly never be able to refund the moneys which he may have collected in the mean time. It is very true the clerk may have sufficient legal excuses to make for not punctually complying with the law. But this does not prove that he must be proceeded against by indictment, for upon notice given of the intended removal he may state his excuses to the Court and have them tried by a jury upon an issue made up for the purpose, if he think proper, as was proposed, 3 Burrows, 1260, upon a mandamus, and then he will not be deprived of his freehold but by the judgment of his peers. That he must have the benefit of their judgment by no means implies that it may not be in a civil proceeding as well as in a criminal one; and if in both, or either, he has the benefit of the constitutional provision, his rights are not invaded. Nor would it be illegal or unconstitutional to say that the clerk may be proceeded against both civilly and criminally diverso intuitu; civilly for the purpose of removal, and criminally for the purpose of pronouncing a judgment of disqualification after conviction on indictment. In this case the disqualification is not a part of the judgment of the County Court, as it ought not to be. But What hinders that judgment to be pronounced upon an indictment, in like manner as upon assault and battery or libel, where both a civil and criminal proceeding may be instituted? If a defendant he not declared to be disqualified by the sentence of removal, and shall not be proceeded against by indictment, he has no reason to complain; and if proceeded against by indictment before the judgment of disqualification can be pronounced, he cannot complain, for he will have had the full benefit of a trial by jury, and may lay before them all the .excuses and other defences which he may legally have. The revenue laws will not then be crippled, nor will collections of the public moneys be retarded or defeated. The clerk need not, indeed, have notice to produce his receipts at the appointed term, for by law he must produce them at that term, whether he have notice or not. But as the Court may not then proceed to removal, and as, notwithstanding the failure, he may have a sufficient excuse to offer, — as sickness, unavoidable detention, burning of houses', loss of papers, death of the treasurer or *274 county trustee, and the like, which prevented the payment and caused the failure, — he must have notice of the intended removal, in order that he may have an opportunity to offer his matters of excuse. If after the term is passed the removal may he made at any subsequent term, the notice is the more necessary, as without it it may be impossible for him even to conjecture at what time the attempt will be made. He is every moment exposed through the whole course of his life, and cannot always he ready, even if present, to produce his excusatory evidence. The indictment is not, in -our judgments, indispensably necessary to precede the removal.
It remains to consider, in relation to the procedure under this Act, whether the clerk must produce the receipts on the first or any other day of the term. The Act is penal so far as relates to the clerk’s removal, and it should therefore be liberally construed in his favor. This leads to the conclusion that he is not hound to exhibit his receipts on the first day, but has at least the whole of the term, even the latter part of the last day of the term. This construction is fortified by the rule that the whole term is but one day, and in construing a penal law the benefit of the rule should not be withdrawn from the person to be affected by the law. And this construction is further aided by the consideration that a new clerk cannot be appointed in the term in which the removal takes place; for by the Act of 1796, ch. 3, and 1817, ch. 48, § 8, the election to fill the vacancy must be on the second day of the term, and must be advertised by the space of one day, or on the first day of the term. If, therefore, the removal be at any time after the second day of the term, the election cannot be so made in that term, nor can it be so advertised, as to make the election fall on any day of the term in which the removal takes place. There is no inconvenience occasioned by waiting till the last day of the term, nor is there any necessity for making the removal at any time prior to the last day of the term. And by producing the receipts on any day he complies with the terms and spirit of the Act. If this be so judgment ought not to be entered against him without notice to defend himself, nor before the latter part of the last day of the term in which the removal takes place; and without proceeding to any further investigation, as the judgment was entered both without notice and before the last day of the term, the same is erroneous. It need not be inquired whether a production of the receipts at any day of the term in which the removal takes place should annul the same, nor whether a failure to remove at the term when the delinquency happened is a waiver of that power for the future.
We would barely remark as a further reason against the necessity for an indictment that no verdict, whether upon an indictment or otherwise, can gainsay that which already appears of record; and that, both by the general practice and the meaning of the Act of 1817, and by *275 the general principles of law, an act which is to be done in court is to be recorded in that court for future reminiscence. And the production of the receipts required by the Act of 1817, ch. 132, and the Act of 1819 aforesaid, should be recorded. And when the question arises, whether produced or not, it should be determined by inspection of the record ; therefore no necessity for a trial by jury, which, in whatever way it might be given, could not contradict the record. In case of failure the Court has a right, and it is their duty to record it, and so whether produced or not produced there is a positive evidence of record which no verdict can control.
As to the commissioners and the report made by them, and the facts stated in the report, the same are in no wise conclusive, that mode not being prescribed by law, nor ordered by law to be recorded, but adopted by the commissioners as a convenient mode of communicating a history of their proceedings. And even if conclusive, the facts stated are not such for which any Act of the Legislature has ordered a removal of the clerk, as is done in 1817, for the default specified in it. This is admitted in argument; but it is better to notice it in the opinion of the Court to exclude the belief that such facts were at all considered by the Court, as of any weight in forming the present opinion.
Our opinion is that the Circuit Court erred in not proceeding to adjudicate on the writ of error from the County to the Circuit Court. Secondly, that the Circuit Court ought to have decided that the judgment of the County Court was erroneous, for want of notice to the clerk of the intended proceeding to remove him. Thirdly, because the judgment of removal ought not to have been made till the latter part of the last day of the term. And that therefore the judgment of the Circuit Court shall be reversed. And this Court proceeding tb give such judgment as the Circuit Court should have given, do order and adjudge that the said James Sevier shall be restored to the office aforesaid, to hold with the same privileges, and subject to the same disadvantages as he was subject to at the time of his said removal.
Whyte, J.
It appeared (from the records in this cause, for there were three of them, proceeding from the desire of both parties to have the case fully before the Court, so that the cause might be examined and decided upon its merits, and not go off upon the ground of the particular remedy adopted being misconceived by the party, all three were therefore read by consent, as forming the facts of one case) that the plaintiff in error, James Sevier, who at the January term of the County Court of Washington County, 1823, then was, and for thirty years preceding had been clerk of the said Court; did on the Friday evening, at the hour of nine o’clock at night of the first week of the term, being the 17th day of the month, receive a notice from the commissioners of Washington County, appointed by the Court to settle with the collectors of *276 county tax, and with the county trustee, to furnish them with a list of the amount of taxes put into the hands of the sheriff or collector, which was due and owing for the year 1822 ; together with the vouchers for the moneys paid by him to the trustee for fines and forfeitures; and the amount of appropriations for the year, either by the Circuit or County Court, with all necessary documents and vouchers showing any receipts or disbursements of public or county moneys, &c. to be furnished by him to them by one o’clock next day, the 18th of January. This was not done, the clerk alleging it was impossible to do so from the shortness of the notice or time allowed thereby ; on the Monday following, being the 20th of the month, the County Court removed James Sevier from his clerkship, he being absent from high waters, intervening between the adjournment of the Court on Saturday and its meeting on Monday, which prevented his attendance, though his proper deputy attended and did the business. The Court, in pronouncing the sentence of removal, said they did so for not furnishing the list of papers and documents to the commissioners pursuant to the said notice given as aforesaid; and also, because, that the proper treasurer’s receipts under the Act of 1817, ch. 182, § 6, were not produced to them by him; no notice was given to the clerk of this proceeding, or that the Court would be applied to to remove him, either for delinquency under the Act of 1819, or the Act of 1817, by the commissioners or any other person whatever; or that the Court of themselves intended to do so. The Court at the same time pronounced the office vacant, and said that they would proceed to elect a clerk to fill the vacancy on the Friday following, the 24th of the month. They did so accordingly, and elected Matthew Stephenson, one of their own body, clerk. On the 25th, being the last day of the term, James Sevier tendered his bill of exceptions to the proceedings of the County Court, so had as above against him, which was signed and sealed by four justices, the Court being then composed of that number, and removed the proceedings by error to the Circuit Court; the Circuit Court dismissed the writ of error on the ground a writ of error would not lie in such a case; upon which Sevier took an appeal in nature of a writ of error to this Court. This forms one of the records above mentioned. Sevier moved the Circuit Court for a mandamus to the justices of the County Court of Washington, to restore him to his office upon the above case appearing in the bill of exceptions on the writ of error ; which being refused, Sevier tendered his bill of exceptions to the judge’s opinion, refusing the mandamus, and prayed an appeal from the judgment of the Circuit Court, in nature of a writ of error, to this Court.
This forms another of the three records above mentioned.
The third record shows that Sevier petitioned the.Circuit Court for a mandamus nisi founded upon, and charging the same facts as in the bill of exceptions above stated, being verified by affidavit, which issued, the joint *277 return of the justices of Washington County, and Stephenson, the present incumbent in office, the refusal of the Circuit Court to grant a peremptory mandamus to restore, and writ of error thereupon to this Court. I entirely concur in the result of the joint opinion delivered by the other two members of this Court, to wit: that James Sevier, the plaintiff in error, was illegally removed from his office of clerk of the County Court of Washington County, by the justices of said Court, and that he ought to he thereto restored by the judgment of this Court. My mind however, arrives at this sameness of result by a different process from theirs, both as to the remedy, and the application and effect.of some of the facts. I have taken up the remedy by mandamus, considering it a proper one under the circumstances of this case, Stephenson having notice and joining in the defence or return, sanctioned as well by the English as the American authorities, and I take it as being well settled, that where the title of the applicant is evident, and the title of the incumbent void, the mandamus is a proper and appropriate remedy to restore to the possession. I proceed then to show from the facts in this record that the title of James Sevier, the plaintiff in error, to the possession of the clerkship of the County Court of Washington, with all its privileges and emoluments is clear and that the title of Mr. Stephenson now in the actual occupation of said office is utterly void.
It is not controverted even by the defendant’s argument, but that until the judgment of removal, pronounced on the second Monday of the January term, 1823, of the County Court of Washington, by the justices of said Court, the plaintiff in error was the clerk of said Court, both de jure et de facto. Indeed, the record and all the proceedings admit this to be the case, and that he had been so for the thirty years, or thereabouts, next preceding that event. His title now must then depend entirely upon the legality of that sentence; this makes the principal question in this cause, the others agitated at the bar being all more or less dependent upon it. I will proceed then to show that this sentence or judgment of the County Court was illegal and void.
'This judgment of removal upon its face professes to be founded on two grounds; 1st, for a failure by him (James Sevier, clerk,) in performing the duties enjoined upon him by the Act of 1819, ch. 38, § 4; and 2dly, for a failure by him in performing the duties imposed on him by the Act of 1817, ch. 132, § 6. I shall examine these grounds separately, and in the order they stand in the sentence pronounced by the County Court.
The Act of 1819, ch. 38, § 4, says, the said commissioners or either of them, shall annually, unless oftener required, apply to the clerk of their respective counties, whose duty it shall be to furnish him or them with a list of the amount of taxes put into the hands of the sheriff or collector, which is due and owing for that year, together with sufficient vouchers *278 showing the amount of. moneys by him paid to the trustee, as required by law for fines and forfeitures, and the amount of all appropriations made for the year, either by the Circuit or County Court,
with all necessary documents and vouchers, showing any receipts or disbursements of public or county moneys; and any person failing to perform any of the duties enjoined on them by this Act, without sufficient cause shown, shall be deemed guilty of a misdemeanor in office, for which they shall be removed.
Under this Act the clerk is not required to do the first Act; his duty is subsequent to, and consequent upon,' a previous act to be done by the commissioners ; that is, an application by them, or either of them, to the clerk, to furnish them with a list of the amount of taxes put into the bands of the sheriff or collector, the vouchers of moneys paid by him to the trustee, the amount of appropriations made by the Circuit and County Court, with all necessary documents and vouchers, showing receipts or disbursements of public moneys, &c. according to the specifications of the Act. Notice, therefore, was necessary under it, and was accordingly given; but was it a sufficient or legal notice ? When the law requires notice, and does not specify the length of time, it will intend a reasonable time, according to the circumstances of the case; and it ought to appear that it was given in due time. 5 Comyns Digest, title Pleader, ch. 74. D|oes a notice given at nine o’clock at night, to comply with all the various requirements of this Act the next day at one o’clock, constitute a reasonable length of time for the requisition ? It certainly does not, and it is the province of the Court to judge whether the notice were sufficient or not, Wallis v. Scott, 1 Str. 89 ; and there is no difference between an insufficient notice and no notice ; they both result in the same thing, to wit: a failure to answer the purpose intended by the law in prescribing notice, and the omission when by law it is necessary, is matter of substance, and may be taken advantage of on general demurrer. 5 Term Rep. 409, Bach v. Owen; and is not aided after verdict. 3 Bulst. t. 299, Doug. Rep. 679. Rushton v. Aspenall, 1 Saund. Rep. 33, note (2).
But this notice by the commissioners to the clerk to furnish them with the papers and documents, according to the various specifications of the Act, although the only notice given him, was not the only notice required by the Act; for, in the case of default by the clerk, in rendering these papers and documents to the commissioners, he may be able to avoid (and so the law contemplates) the very serious consequences attached thereto, by showing sufficient cause, and thus avoid a removal from office. The Act upon this is express ; it says : “ And any person failing to perform any of the duties enjoined on"them by this Act, without sufficient cause shown, shall be deemed guilty of a misdemeanor in office, for which they shall be removed.” It being competent for the clerk to show sufficient cause, to *279 whom was it to be shown to avoid this highly penal consequence of removal from office ? Was this the County Court of Washington, sitting at the January term, 1823? I say not; but the cause was to be shown to the proper authority constituted by the law to make the inquiry into the failure, for the purpose of deprivation of office. But suppose that Court, for the present, was the proper constituted tribunal to make the inquiry of failure of duty under the Act, for the purpose of removal, what ought to have been done by somebody for the benefit of Sevier, the clerk.? He ought to have had notice given him that an application would be made to the Court at a particular time to remove him for failing to perform the particular duty of not furnishing the commissioners with the papers and documents, according to the specifications of this Act, and pursuant to its injunctions ; upon which it would have been competent for him to show sufficient cause why they were not so furnished, and thus avoid the removal. This notice was not given, nor is there the least pretence offered of its being so. The second ground of removal assigned by the Court is, the failure of the plaintiff in error to produce the proper treasurer’s receipts to the Court, pursuant to the Act of 1817, ch. 132, § 6.
This Act is in these words: “ That it shall be the duty of each and every clerk of any county court, circuit court, or supreme court within this State, at the first session of the Court of which he is clerk, which shall sit after the first day of January in each year, to produce to said Court the proper treasurer’s receipt for having rendered an account of, and the payment of the moneys by him collected for the use of the State, in manner heretofore prescribed by law. And the clerk of each county court shall in like manner produce to said Court the proper treasurer’s receipt for having rendered to him an account of the State tax, for which the sheriff of his county is chargeable; and if any of said clerks shall fail to perform any of the duties imposed on them by this Act, it shall be considered a misdemeanor in office, for which said clerk shall be removed from office by the Court of which he is clerk, and shall not be eligible to the said office for the term of ten years.”
Under this Act it was contended for Sevier, 1st, that notice ought to have been given him by the Court, to produce to the Court the treasurer’s receipts, before they could be authorized to remove him for the not producing them.
My opinion on this point is that a notice from the Court to the clerk, to produce the receipts of the treasurer, was not necessary. It would have been a nugatory act; why ? • Because this Act does not require it in terms ; and in its spirit, its sense, and its true construction, negatives such a proceeding. For suppose a notice, it must be either general or special; general, that the clerk produce to the Court the treasurer’s receipts, according to the specifications of the Act, at its first session after the 1st day of January, *280 1823; or special, to produce the same to the Court on the first, second, third, or some other day of the same session. The former notice the law' has already given by the Act itself; it says, “ That it shall be the duty of each and every clerk of any county court, &c. at the first session of the Court of which he is clerk, which shall sit after the 1st day of January, in each year, to produce the treasurer’s receipts,” &c. &c. The latter notice or special notice would be contrary to the law, for the Act has given the clerk the whole session to produce the receipts, the last hour of which, as well as the first and every intermediate hour, enters into the constitution of the session, and when a thing is directed to be done at a court, or session, or term of a court (synonymous expressions), a whole is' meant, incapable of divisibility, for the purpose of excluding any part or portion of it.
But although Sevier was not entitled to have notice from the Court to produce these receipts, for the purpose of guarding or defending himself against the penal consequences of a default by him in this respect, yet the Court was premature in its action upon the matter, and acted at the least erroneously therein. In the first place, the Court had no right to record his default in not producing the receipts, and, secondly, it had no right to proceed at the time it did, to wit, on the second Monday of the session, to remove their clerk from office for said default, supposing it had been in truth incurred, and supposing the Court competent at that term to have legally pronounced the sentence of removal. For I am of opinion that under this Act, as it regards the conduct of a court, with reference to the producing to it the treasurer’s receipts by its clerk, whether it be a county court, or circuit court, or a supreme court, the court is altogether passive, the clerk is the first agent.
If he produces the. treasurer's receipts they ought to make a record of their being so produced; because, the Act having directed their production to the courts, it must have been for the purpose of testifying to the fact of production by the court, and this a court can only do, as it can only speak, by its record. If the clerk does not produce the treasurer’s receipt to the Court it has nothing to do in the matter, being passive, and not called into action by the clerk’s pi'oducing the receipts to it. But it may be said, why make a record of the production of the receipt if offered, and not of its non-production if not offered P For this plain reason, that in the one case the Act has directed it so, and necessarily; in the other it has not, because not necessary, and to do so would be quite a work of supererogation ; for if the record does not state their production its silence shows their non-production, and any further testimony would be at variance with the rule of evidence that a negative need not be proved, but an affirmative only. See Bul. N. P.; Phil. Ev. 150, and the cases there cited.
I have already said that the Court acted prematurely in removing Sevier *281 from Ills office at the time it was done, for not producing the treasurer’s receipts ; it had the right to do so during that session. The Act makes it the duty of the clerk to produce the treasurer’s receipts to the Court at the first session which shall sit after the first day of January. “ At the first session ” are the emphatical words on which the sentence of the County Court of Washington rests, for its being legal or erroneous. These words, independent of the criticisms of the learned counsel, are not of dubious import; they have a clear and obvious meaning, expressive of the whole session, in reference to the act to be done. This construction has been given by the Court of Appeals of the State of Virginia to the same words, in an act of Assembly of that State, and in an analogous case to the present; 3 Hen. & Munf., Dew v. The Judges of the Sweet Springs, &c. Judge Tucker thus expresses himself: “ It is contended that the words, ‘ at the first session ’ must mean the first day ; but I see no reason for that construction any more than the first hour or the first minute. The term ‘ session,’ when applied to Courts, means the whole term, and in legal construction the whole term is construed but as one day, and that day is always referred to the first day or commencement of the term.” Judge Roane adopted the argument of the appellant’s counsel, which was to the same effect; and Judge Flemming said, “ According to what I deem to be the true construction of the clause which requires a clerk, at the first session of the Court after his appointment, to enter into bond with sufficient security, he ought to be allowed the whole term or session of the Court to provide and give the security so required; which, if he tender at the last hour, the Court is bound to receive, take his bond, and enter it of record, which would be a due compliance with the object, intention, and even letter of the law.” This very respectable decision comes up fully to the present case, and is in point to show that James Sevier, the clerk, had the whole term or session, even to the last hour thereof, to produce the treasurer’s receipts to the Court; the Court was therefore altogether premature in doing the act on the second Monday, which the authorities of the law only permitted on the following Saturday. The production of the receipts would have answered every purpose intended by the Legislature if made on the last day, equally as on the first hour of the session. The objects of the statute were, the security of the public in having a proper application made of their moneys received by the clerk, and the furnishing probable and easily accessible information whether this was done or not. If no record at the first session of the production of the receipt by the clerk, this would be evidence of misapplication by him. If the record showed the production, it would be evidence of a proper application ; but in both cases the record would be only prima facie evidence, and not conclusive evidence of the misdemeanor created by the statute; the being guilty of which causes a forfeiture of office and future ineligibility to the same for the term of ten years. Now, as this record ot *282 the production of these receipts, or the want thereof, could not be used as evidence the same term'in the case of a clerk of a Supreme Court, it is an additional reason that the Legislature intended to give the whole term or court to make the production.
From this view, the removal of James Sevier, the plaintiff in error, frcm the office of clerk of the County Court of Washington was erroneous.
The election and appointment of Mr. Stephenson, the present incumbent, to fill the said office, being held and made on the second Friday of the same session Sevier was removed therefrom, was also erroneous, being contrary to the provision of the acts of Assembly of 1796, ch. 48, § 8, and §§ 1 and 2 ; 1817, ch. 48, § 8.
Another view remains to be taken of these proceedings respecting the clerkship, as constituting covin, from the time and the manner in which they were transacted, and this notwithstanding it should be admitted that the Court might legally have pronounced the sentence of removal at the latter part of the session, upon the fact of the treasurer’s receipt not being then produced. 1st. In the notice being given to the clerk by the commissioners at 9 o’clock at night of the 17th of the month, to furnish them with the papers, accounts, and documents, under the Act of 1819, ch. 38, § 4, on the day following (18th of the month), at one o’clock, which was not due notice.
2d. In there being no notice given the clerk that the Court would be applied to on the Monday following to remove him from office (the 20 th of the month), for not furnishing the said papers, accounts, and documents, pursuant to the said notice given, which ought to have been given, that he might have had an opportunity of showing sufficient cause, which the Act expressly allows him to do.
3d. In this application to remove from office being made and acted upon by the Court in his absence and without notice, which absence was occasioned by high waters preventing his access to the Court.
4th. In the Court’s grounding their sentence of removal, in part, on the clerk’s not producing the treasurer’s receipts, when by law he was not bound to have done so on that particular day, but by law had to the end of the term allowed him for their production, which term continued for five days after his removal.
5th. In appointing a new clerk the same session the old clerk was removed contrary to the laws and well-known usages of the country.
These hasty and hurried proceedings by the commissioners and the Court, not according to the forms and usages of law, and against the consent of the plaintiff in error, forbidding him the benefits and advantages of the laws of his country, to which he had a natural right; and eventuating in the highly penal consequences of his removal from office, and future disqualification for the term of ten years to hold the same; and all without *283 necessity, or even the color of it, I consider, amounts to covin in law upon this record. Whether a person has been guilty of fraud in a particular transaction, is generally a conclusion of law upon the facts proved. 2 Phillips, 268. I do not wish to be understood as saying that there is in this record any special averment, that these parties, the commissioners and the County Court of Washington, intended covin, or in any way whatsoever were actuated in these proceedings by improper motives, or that there is any proof by witnesses to support such an averment, and much less, that such is my private opinion, the expression of which I would consider very reprehensible, a judge, as such, only having a judicial opinion ; very far from it. The covin I speak of is not founded upon, neither does it require, such premises to support it. The law pronounces certain facts appearing upon a record to constitute covin in law, without reference to proof by witnesses of the intention of those facts, and such is the covin I say that éxists here, and I shall cite some authorities to prove the position. The first is the important case of the Duchess of Kingston, who was tried for her life, in the year 1776, before the peers in Parliament,'for bigamy. The Lords ordered two questions to be put to all the judges of England, one of which was, “ whether the counsel for the crown could be admitted to avoid the effect of a sentence of the spiritual court, by proving the same to have been obtained by fraud and collusion.” Sir Wm. De Gray, Chief Justice of the Common Pleas delivered the unanimous opinion of all the judges, a part of which is the following to the present point: “In civil suits,” says he, “all strangers may falsify for covin, either fines, or real or feigned recoveries, and even a recovery by a just title, if collusion was practised to prevent a fair defence, and this, whether the covin is apparent upon the record as non-essoigning, or not demanding the view, or by suffering judgment by confession, or default, or extrinsic, as not pleading a release, collateral warranty, or other advantageous plea.” Hale’s His. Com. Law, 38, late Lon. Ed. of 1820.
This celebrated judgment, as it is justly styled in the books, when it is .quoted, shows that covin may be apparent upon the record, and not es-soigning, not demanding the view, are put for examples of what constitutes such apparent covin upon a record. Alsb, in Wembish v. Talbois, Plow-den, 55, in a writ of trespass, the replication showed forth a formedon in descender and judgment the first day, by nient dedire, &c., to which there was a demurrer. Molineux, J. page 49, a., says, “.There is diversity between covin apparent, and covin not apparent, for to aver that which is apparent is vain ; and so here it is in vain to show the collusion specially, because it is apparent; for the woman defendant when she-was impleaded came at the first day, and, therefore, was not amerced, and also was not essoigned, nor had the view, and she lost her other advantages which the law gave her, by which act there appears a voluntary assent in her, and *284 covin apparent, and then to aver that specially which appears by the record is in vain.” Montague, C. J., 55, 56, says : “ For as the king’s subjects are born to inherit land and other things, so are they born to inherit and enjoy the laws of this realm, and every man alike may have the benefit of the law, and the common presumption is, that every man chooses to accept of it. But the contrary appears in the woman defendant, for when she was impleaded in the formedon she had not view, nor was essoigned ; and it is to be presumed she had cause of voucher, inasmuch as the tail is old, and she did not vouch, but lost the advantage given her by the law, and also she came the first day, and therefore was not amerced, and said she could not deny the action ; all which prove openly a covin.” If in this case of Wembish and Talbois, the circumstances of the defendant’s not taking the delay of an essoign, or not taking the view of the premises demanded, &c. and the other advantages the law gave her, were adjudged a covin appearing on the record; how much more strongly do the same things in the present case, the circumstances of the undue' notice of the commissioners, the Court’s acting upon this undue notice, and that without any notice it would do so, and
this too, in the absence of the party it was so acting upon, and also taking into view the additional consideration that this absence was ex necessitate.
Again, on the other ground assigned for the judgment of the Court, to wit: the non-production of the treasurer’s receipts; here a notice was not necessary, it is true, but there was no default incurred and judgment was therefore, rendered without a cause, and the privilege of the Act allowing the whole term, thereby denied him. All these prove a covin, because the party thereby, in the language of the book, loses the benefit of the law of the country he was born to inherit and to enjoy.
Admitting, in the present case, the truth of the grounds for the sentence and the power of the Court to have rightfully rendered that sentence, upon these grounds, at a proper time during the same term; yet the removal being under circumstances that constituted apparent covin on the record, the removal is void and inoperative for the purpose of injuring or affecting the title of the plaintiff in error. The principle is laid down in the 1 Inst. 35, a., to wit: “ the wrongful manner shall avoid the matter that is lawful ” ; and Lord Coke further illustrates it in the same book, 357, b.; says he: “A woman is lawfully entitled to her dower, and she is of covin and consent that one shall disseise the tenant of the land, against whom she may recover-her lawful dower; all which is done accordingly. The tenant may lawfully .enter upon her, and avoid the recovery in respect to the covin. And so it is in all cases where a man hath a rightful and just cause of action; yet if he be of covin and consent to raise up a tenant by wrong against whom he may recover, the covin doth suffocate the right, so as the recovery, though it be on a good title, shall not bind to restore the demandant to his right.” *285 And. so I say, pursuant to tlie principle of these cases, that the removal of Sevier from his clerkship aforesaid, in the manner appearing on this, record, is illegal and void.
So far in my opinion it was only necessary to examine the points made in this cause by the counsel, but they have insisted upon an expression of the opinion of the Court on another point, to wit: whether under the two acts already noticed, and other anterior acts of Assembly, taken in conjunction with the 14th section of the Declaration of Eights and the 11th article of the Constitution, the Court of Washington could have removed James Sevier from his office of clerk, unless his failure to comply with the duties imposed on him by the Acts of 1817,’ch. 132, § 6, and 1819, ch. 38, § 4, had been previously ascertained and made appear to them, by conviction upon indictment for a misdemeanor in office.
It was insisted by the Attorney-General for the defendants in error that the Act of 1817 gave the power of removal from office in the present case to the Court, upon inspection of the record and its thereby appearing that the clerk had not produced to it the treasurer’s receipts required, without conviction thereon by indictment; and on the other side it was insisted that if this was the true construction of the Act, which' they by no means admitted, it was unconstitutional and ought not to be executed by the Court. On this examination a short review of the Constitution and these acts of Assembly must be taken together.
The Constitution, art. 11, § 14, is in these words: “ That no free man shall be put to answer any criminal charge but by presentment, indictment, or impeachment.”
The Act of 1801, ch. 17, § 1, says: “ That if any clerk of any court of record shall hereafter willingly, wittingly, or corruptly do any act or thing contrary to the duties of his office, as prescribed by law, or in like manner omit or refuse to'perform any services or duties required of him by act or acts of the General Assembly, he shall be deemed guilty of a misdemeanor in office, and on conviction thereof by indictment, the court of which he is clerk shall have full power and authority to remove him from office, and elect another in his stead.”
The Act of 1805, ch. 1, §§ 1 and 2, recognizes the Act of 1801.
The Act of 1807, ch. 66, after prescribing several duties to clerks, in the 9th section says: “ That if any of said clerks shall fail to perform any of the duties imposed on them by this Act, it shall be considered a misdemeanor in office by such clerk and he shall be liable to be indicted therefor in the court of which he is clerk, except clerks of the Court of Equity, who may be indicted in the Superior Court of Law of the same district in which he may be clerk, and upon conviction such Court may remove such clerk from his said office.”
Then comes the Act of 1817, ch. 132, already cited, making a *286 failure by the clerk to perform any of his duties in office a misdemeanor, for which he shall be removed from office by the court of which he is clerk, omitting to express that he shall be indicted for the misdemeanor, and upon being convicted thereof be removed from office, as in the former acts.
This review obviously presents as a primary question, is a misdemeanor a criminal charge ? Does it import a crime as contrasted with, or placed in opposition to a civil injury. We must presume that the Legislature used the term “ misdemeanor ” in its well-known acceptation in law, and that they intended it in the same sense, and no other, than that in which it is held by the authorities of the law; that is, synonymous with the term “crime.” Thus Blackstone, 4 Com. p. 5, says, “ A crime or misdemeanor is an act committed, or omitted, in violation of a public law, either forbidding or commanding it. This general. definition comprehends both crimes and misdemeanors, which, properly speaking, are mere synonymous terms, though in common usage the word ‘ crimes ’ is made to denoté such offences as are of a deeper and more atrocious dye, while smaller faults and omissions of less consequence are comprehended under the gentler names of ‘ misdemeanors’ only.” And Christian says, “‘Misdemeanor’ is generally used in contradistinction to ‘ felony ’; and misdemeanors comprehend all indictable offences which do not amount to felony, as perjury, battery, libels, conspiracies,” &c. In addition to these, the intrinsic evidence furnished by the acts themselves constitute a no less sure criterion for fixing the meaning of the Legislature. One of these says, “ and on conviction thereof by indictment ”; and another says, “ he shall be liable to be indicted therefor, and upon conviction,” &c. These I hold irrefragable proofs to stamp the character of the term “misdemeanor” and must consider it as incontestably appearing that the Legislature has made the failure in duty imposed by these acts a crime or criminal charge. This established, the mode by which it is to be ascertained, and the tribunal of investigation, are pointed out and fixed by a paramount law to the ordinary exercise of legislation by act of Assembly. This tribunal cannot be a Court by itself, whether composed of one or many members; ñor can it be one or more commissioners acting in the matter, under legislative sanction ; nor can it be any special delegated authority for that purpose; for if so, as was argued by the counsel, every collector of public taxes might be converted into a criminal tribunal, and convict of a crime the citizen who failed to pay his taxes, upon the Legislature enacting simply, as in the above-cited acts of Assembly, that the .failure in their payment be considered a misdemeanor. •
In this part of the case it was insisted on argument, that the Acts of 1801, &c., having given the trial by indictment, and conviction by jury, to defaulting clerks, it was also competent to take away, and more especially in future enactments, constituting new and other omissions, and failures in *287 duty by clerks’ misdemeanors in office, they had the power of prescribing' the tribunal and the mode of trial; and it was asked, if these legislative enactments of 1801, 1805, and 1807, requiring conviction by indictment, amount to the same thing as the Constitution, and only enact what was by that instrument the law before, why make them, thereby advancing an implication, that the provision of these acts under § 14 of art. 11 of the Constitution were not ad idem ? To this it may be answered that these are not the only instances to be found in our statute book of the like kind. We have acts enacting what was in force by the common law ; acts enacting what had been previously enacted by other acts; and acts enacting what the Constitution had already provided for ; and upon this practice it may be observed that the posterior enactments are simply unnecessary. It is not perceived that any injury is done by.them; but if any effect is produced, it is rather the reverse of injury, as operating by way of stimulus to the attention, and extending in fact their publication. Some sentiment of this nature, operating on the minds of the early Legislatures after the adoption of our Constitution, might perhaps have given rise to the iterations of the constitutional provision now under consideration. Impressed, as these bodies no doubt were, with veneration for this noble bulwark of individual security, and wishing to evince their approbatory support thereof by an open expression, and also pro majore cautela to add their mite if possible to its efficacy, by contemporary construction, the repetitions were ingrafted upon these acts; adding (though not in contemplation of law, yet), in fact, to their publicity and currency, through the medium of these public laws; furnishing at the same time a practical exposition of this general rule of the Constitution, in its reference to a particular case, thereby confirming as it were the universality of its application.
The Act of 1817 has omitted the repetition of the constitutional provision contained in 1801 and 1807, and it is therefore contended by the Attorney-General that the mode of trial and conviction by those acts is changed, and transferred to the Court, as to the misdemeanors created by it (1817), in not producing the treasurer’s receipts.
The omission in 1817 of the constitutional provision contained in 1801, 1805, and 1807 is not material, as its insertion in these acts neither added to nor detracted from its force and effect. Equally unavailing against the power of the same provision would be the attempts of the Legislature of 1817 to transfer the conviction of a misdemeanor from the regular common law trial by jury to the summary proceeding by a Court, were it the case ; but it is not so. The supposition of the Attorney-General that it is proceeds from a misapprehension of the Act in attaching a wrong predicate to the .Court, as a Court, to wit, the trial and conviction of the misdemeanor instead of the removal from office. This is self-evident, by attending to the phraseology of each of the acts; and 1st,the Act of 1801 says: *288 “ And on conviction thereof by indictment the Court of which he is clerk may have full power and authority to remove him from office.” Now what is the predicate to the Court here ? What is that which is affirmed may be done by the Court ? Removal of the clerk from office, not trial and conviction of the misdemeanor. In like manner the Act of 1807, says: “ It shall be considered a misdemeanor in office by such clerk, and he shall be liable to be indicted therefor in the Court of which he is clerk, except clerks of the Courts of Equity, &c., and upon conviction, such Court may remove such clerk from his said office.” Now what is that, which, by the direction of the Act, is to be done by the Court ? The removal of such clerk from his said office, not his conviction, for that is to be upon indictment in the Court, according to the regular common law course. The Act of 1817, says, “ it shall be considered a misdemeanor in office, for which said clerk shall be removed from office by the Court of which he is clerk ”; not that he shall be convicted by the Court, but that he shall be removed from office by the Court; removal in this Act, as in all the other Acts, being the predicate to the Court, to wit, the Act affirmed to be done, or that may be done, by the Court. Conviction is not noticed at all by this Act; that is left to the regular common law course of proceeding by presentment or indictment, which is taken up and adopted by the Constitution, and may accrue two ways, — either by his confessing the offence and pleading guilty, or by his being found so by the verdict of his country.
This slight analysis of these acts shows that there is no repugnancy between them, but on the contrary, the most perfect coincidence of object, guided and governed by the paramount rule of the Constitution which they strictly follow. The conviction of the misdemeanor is to be by indictment; the removal from office and the sentence of the law thereupon is to be by the Court; and indeed, how could it be otherwise, to have the right of the matter tried, and justice duly administered; consider the nature of these crimes or misdemeanors ; for example, those created by the Act of 1817 ; the non-production of the treasurer’s receipts. I have already stated that this can only be prima facie evidence of guilt, the quo animo does not appear, which it ought to do, to give satisfactory proof of a crime. Thus Blackstone: “ To make a complete crime cognizable by human laws, there must be both a will and an act ”; 4 Com. p. 20; “ the not producing the receipt is a negative act; but to make it a misdemeanor there must have been the will also not to produce ; and this want of will may be evidenced various ways; the most unerring would be collecting it from the circumstances of the case, and particularly from the steps taken anterior to the time designed for the production, and as being more or less conducive thereto. To be a little more particular ; let the misdemeanor charged be, that the clerk did not produce to the Court, at the first session, &c. the proper treasurer’s receipts for having rendered an account of, and the pay *289 ment of the moneys by him collected for the use of the State.” And upon the trial of the indictment, the clerk proves, that in proper time he sent forward to the proper treasurer the account required, and the moneys so collected, by a fit and proper agent, and that misfortune had befallen this agent,' as sudden death, robbery, loss by high waters, as of the saddle-bags in which the account and money were conveyed, or loss by other inevitable accident, and reparation made by him, the clerk, in reasonable time thereafter, by a second transmission, which is successful, of a copy of the account, and the amount of the moneys from his own private funds, and the proper treasurer’s receipt is procured, but not in time to be produced at the first session, &e. &c. Would not a jury collect from these circumstances the absence of one of the essential requisites that enters into the constitution of a misdemeanor, to wit: the will, or the intention, not to produce the receipt? Certainly, in such cases, no conviction could take place, and that for the best' of reasons, because no crime. Suppose, further, in the above case, the misfortune, instead of falling upon the agency in going, had done so upon its return, and the treasurer’s receipt timely procured had been thereby inevitably lost, and satisfactory proof made of all this, could there be a conviction for the non-production ? Most assuredly not; because, no will, and therefore, no crime. All these examinations of matters of fact, and others of like kind incident to the trial of a misdemeanor, are in their nature better suited for, and considering the establishment of right, and the due administration of justice, their object can be better had, by the regular proceeding of presentment, indictment, and trial by jury, than by a summary proceeding, which an act of the Assembly may prescribe or direct, where there is no intervention of a jury, but the party charged is acquitted or condemned by the suffrage of such person or persons only as the Act has appointed ibr his judge or judges. Mr. Justice Blackstone, speaking of the institution of these summary proceedings by several acts of Parliament, says, the common law is a stranger to it, unless, in the case of contempts, and it has of late years been so far extended, as, if a check is not timely given, to threaten the disuse of our admirable and truly English trial by jury, unless only in capital cases. 4 Commentary, 280, 281. We have to give- thanks to the framers of our Constitution that this check in Tennessee has not only been given, but, also, a positive fundamental prohibition against it, by the 9th and 14th sections of the 11th article of the Constitution ; the latter section saying, “ that no freeman shall be put to answer any criminal charge, but by presentment, indictment, or impeachment”; and the former, “ that the accused shall have in prosecutions by indictment, or presentment, a speedy public trial by an impartial jury of the county or district in which the crime shall have been committed.”
To conclude, my opinion on this question is that by the Act of 1817, ch. *290 132, § 6, a Court has the power of removal of its clerk from office, only given to it upon the conviction of the misdemeanors created by the Act appearing to them upon presentment or indictment, either by his confessing the offence and pleading guilty, or by his being found so by the verdict of a jury of his country.
Note. — Thera is some apparent conflict between the remarks, arguendo, of the learned judge who delivers the opinion of the Court in this ease, and his remarks in Hardin County Court v. Hardin, Peek, 291, to which Mr. Meigs has directed attention in his Digest, 5 458. But there is no conflict in the points actually decided.
This case is cited in Bob v. State, 2 Y. 179, for the remarks of Haywood, J. on pages 337, 338, in relation to revising the action of an inferior court refusing a writ of error or certiorari. — Ed.
On the argument of the case the Attorney-General, Colonel Taylor, cited ex relatione, and relied upon Hardin’s case at Columbia as in point authorizing the removal of Sevier from office by the justices of the County Court of Washington, and of course as being in opposition to the law as understood and laid down in this opinion. If that case is so, I answer that I must acknowledge for myself Hardin’s case, as far as it is my decision, to be wrong. The present case of Sevier was much more fully argued than that case, and the very able arguments of the learned counsel on this occasion have satisfied me that I committed an error in that decision ; I therefore readily embrace this first opportunity now offered for its correction.
Let the judgment of the Circuit Court be reversed, and a judgment of this Court be rendered that a peremptory mandamus issue to restore the plaintiff in error, James Sevier, to the possession of his clerkship, with all the privileges and emoluments thereto belonging.